IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.  3:14-CV-217-MPM-SAA |
| v. | ) ) | C O M P L A I N T |
| RESOURCE EMPLOYMENT SOLUTIONS, LLC | ) ) ) | Jury Trial Demanded |
| Defendant. | ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights act of 1964, as amended ("Title VII"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the bases of race, national origin, retaliation, failure to preserve relevant employment records, and to provide appropriate relief to Nakia Sanford and class of individuals who were adversely affected by such practices.

As alleged with greater particularity below, Plaintiff, Equal Employment Opportunity Commission, alleges Defendant, Resource Employment Solutions, LLC, failed to place, assign, and/or refer Nakia Sanford, Black, and a class of other qualified applicants to temporary positions because of their race, Black, and national origin, non-Hispanic, in violation of Title VII. The Commission further alleges that Defendant, Resource Employment Solutions, retaliated against Nakia Sanford by denying her a promotion, and by discharging or by failing to assign her because she engaged in activity protected by Title VII. The Commission also alleges

that Defendant failed to preserve records relevant to the determination of whether Defendant engaged in unlawful employment practices.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1), and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Mississippi, Oxford Division.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission ("EEOC' or "the Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of the Title VII and is expressly authorized to bring this action by § 706(f)(1) and (3) of Title VII, 42 U.S.C. 2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant, Resource Employment Solutions, LLC ("Defendant"), has been a foreign corporation doing business in the State of Mississippi and in DeSoto County.  Defendant has continuously had at least fifteen (15) employees.

5.     At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6.     At all relevant times, Defendant has also procured employees for other employers and has been an employment agency within the meaning of § 701(c) of Title VII, 42 U.S.C. § 2000e(c).

## STATEMENT OF CLAIMS

7.     More than thirty days prior to the institution of this lawsuit, Nakia Sanford filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant.

8.     The Commission found reasonable cause to believe the charge was true and endeavored to eliminate the discriminatory practices through informal methods of conference, conciliation, and persuasion, but was unable to secure a conciliation agreement acceptable to the Commission.

9.     All conditions precedent to the institution of this lawsuit have been fulfilled.

10.     Since at least February 2011, Defendant has engaged in unlawful employment practices in violation of Title VII, § 703, 42 U.S.C. § 2000e-2(a).  These unlawful employment practices include failing to place, assign, and/or refer Nakia Sanford because of her race, Black, and national origin, non-Hispanic.

a.     Defendant provides temporary staffing services to client companies.

b.     Since at least February 2011, Defendant has maintained a branch office located at 3003 Airways Boulevard in Memphis, Tennessee.

c.     Since at least February 2011, Defendant serviced only one client from its Airways Boulevard office, FedEx Smart Post, which is located at 4325 Executive Drive, in Southaven, Mississippi.

d.     On or about May 11, 2011, Sanford appeared at Defendant's Airways Boulevard office because she learned that Defendant was seeking applicants for employment.

e.  Sanford completed an application, went through the orientation process, and was placed on Defendant's roster as eligible for placement at FedEx Smart Post.

f.  Defendant instructed Sanford that placements and assignments were given on a first come, first serve basis, based on the sign-in time.

g.  Defendant instructed Sanford that if she wanted to work a given shift she must report to the FedEx Smart Post location and place her name on the sign-in, where placements would be made in order of the sign-in time.

h.  Sanford reported to the FedEx Smart Post location and signed the sign-in sheet, which was maintained by Suly Lara (Defendant's Onsite Team Lead Supervisor).

i.  Sanford was not placed or assigned to work, but observed that Suly Lara allowed several Hispanic employees to work, even though they had arrived after her.

j.  Sanford continued to report to the FedEx Smart Post location to sign the sign-in sheet.

k.  On several occasions, Sanford reported very early in the morning to ensure that her name would be first on the sign-in sheet for work.

l.  Sanford observed that Suly Lara regularly pre-drafted a sign-in sheet with Hispanic names, regardless of what time the Hispanic employees arrived at the worksite.

m.  Sanford was eventually placed to work on or about June 5, 2011.

n.  Sanford continued to report to the FedEx Smart Post location and was placed sporadically, generally receiving between 15 and 25 hours of work per week.

o.  Sanford continued to observe that Hispanic employees received preferential treatment in terms of the sign-in sheet process, and that Hispanic employees received more hours, including overtime hours, than non-Hispanic employees.

4

11.     The effects of the practice complained of in paragraph 10 a through o above has been to deprive Nakia Sanford of employment opportunities and otherwise adversely affect her status as an employee because of her race, Black, and national origin, non-Hispanic.

12.     Since at least February 2011, Defendant has engaged in unlawful employment practices in violation of Title VII, § 703, 42 U.S.C. § 2000e-2(a). These unlawful employment practices include failing to place, assign, and/or refer a class of individuals because of their race, Black, and national origin, non-Hispanic.

a.     Since at least February 2011, Defendant serviced only one client from its Airways Boulevard office, FedEx Smart Post, which is located at 4325 Executive Drive, in Southaven, Mississippi.

b.     Defendant accepts applications, screens applicants, conducts orientation, and then places employees' names on the roster of employees eligible for placement at the FedEx Smart Post location.

c.     Since at least February 2011, Defendant's placement or assignment process was handled on a first come, first serve basis, where any employee who desired to work a given shift must report to the FedEx Smart Post location and place his or her name on the sign-in sheet, where placements would be made in order of the sign-in time.

d.     From at least February 2011 through at least November 2011, Defendant gave preferential treatment to Hispanic employees.

e.     Suly Lara (Defendant's Onsite Team Lead Supervisor) pre-drafted sign-in sheets with Hispanic names and allowed Hispanic employees to work even though they had not signed the sign-in sheet.

f.      Rebecca Mejia (Defendant's Branch Manager) received several complaints about Hispanic employees receiving preferential treatment.

g.      Mejia discussed the complaints with Suly Lara and forwarded the complaints to Defendant's corporate headquarters in Orlando, Florida, but the complaints were ignored.

h.      Isabella Esmeralda (Defendant's Onsite Lead) observed that Suly Lara would place certain Hispanic names on the sign-in sheet regardless of what time the employees actually arrived, and even though other non-Hispanic employees had arrived first.

i.      During 2011, Defendant maintained a subcontract with Labor Force Staffing Agency to provide additional workers at the FedEx Smart Post location when needed.

j.      Joreg Lomelin (Labor Force's Branch Manager) received complaints from two employees that Suly Lara was giving preferential assignments and more hours to Hispanic employees.

k.      On or about September 20, 2011, Lomelin submitted an email to Defendant stating that he had received complaints that Suly Lara was giving preferential treatment to Hispanic employees.

l.      From at least February 2011 through at least November 2011, Hispanic employees working for Defendant at the FedEx Smart Post location averaged approximately 53 hours per month.

m.      From at least February 2011 through at least November 2011, non-Hispanic employees working for Defendant at the FedEx Smart Post location averaged approximately 29 hours per month.

13.      The effects of the practice complained of in paragraphs 12 a through m above has been to deprive Black and non-Hispanic employees as a class of employment opportunities and

otherwise adversely affect their status as an employee because of their race, Black, and national origin, non-Hispanic.

14.    Since at least approximately October 2011, Defendant has engaged in unlawful employment practices in violation of Title VII, § 703, 42 U.S.C. § 2000e-3. These unlawful employment practices include retaliating against Nakia Sanford by refusing to promote her because she engaged in activity protected by Title VII. These unlawful employment practices also include retaliating against Nakia Sanford by discharging her and/or failing to assign her for engaging in activity protected by Title VII.

a.    On or about August 19, 2011, Gus (last name unknown) (Defendant's Supervisor) offered Sanford a promotion to a lead position, which entailed a pay raise from $8.75 per hour to $10.00 per hour.

b.    Sanford accepted the promotion and agreed to work night shift as a Lead for Defendant.

c.    Sanford complained to Defendant regarding Hispanic employees receiving preferential treatment.

d.    Sanford filed a charge of discrimination with the Commission on or about September 22, 2011.

e.    Thereafter, Defendant denied Sanford the promotion.

f.    Sanford continued to work for Defendant after filing her charge of discrimination and after being denied the promotion to a Lead position.

g.    Sanford was required to be off work in January 2011 due to child care and transportation issues.

7

h.     Sanford advised Defendant that she would need to be off work, and Defendant instructed Sanford to call when she was available for work.

i.     On or about February 7, 2012, Sanford advised Defendant that she was available to return to work.

j.     Defendant contacted Sanford and raised the issue of her pending charge of discrimination, but Sanford stated that she could not discuss the pending charge of discrimination.

k.     Thereafter, Sanford received notice from Defendant that it would not assign or place her because she had failed a background check.

15.     The effect of the practice complained of in paragraphs 14 a through k above has been to deprive Nakia Sanford of equal employment opportunities and otherwise adversely affect her status as an employee because she engaged in activity protected by Title VII.

16.     Since at least March of 2011, Defendant has failed, in violation of Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), to make and preserve records relevant to the determination of whether unlawful employment practices have been or are being committed.

a.     Defendant instructed workers that placements and assignments were distributed on a first come, first serve basis.

b.     Defendant maintained sign-in sheets depicting the order employees arrived at the worksite, for purposes of distributing assignments on a first come, first serve basis.

c.     Charging Party filed a charge with the EEOC on September 22, 2011, alleging Defendant was distributing assignments and placements based on race and not on a first come, first serve basis.

8

d.     Defendant could not produce the sign-in sheets from March through September of 2011.

17.     The effect of the practice complained of in paragraphs 16 a through d above has been to deprive Nakia Sanford and a class of Black and non-Hispanic employees, of their federally protected civil rights.

18.     The unlawful employment practices complained of in paragraphs 10, 12, 14 and 16 above were and are intentional.

19.     The unlawful employment practices complained on in paragraphs 10, 12, 14 and 16 above were and are done with malice and reckless indifference to the federally protected rights of Black and non-Hispanic workers.


PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates because of race, Black, and national origin, non-Hispanic.

B.     Order Defendant Employer to institute and carry out policies, practices and programs which provide equal employment opportunities for Black and non-Hispanic applicants and workers which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make whole Nakia Sanford, and a class of Black and non-Hispanic applicants and workers by providing appropriate back pay with prejudgment interest, in

amounts to be determined at trial, and any other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful place hiring.

     D.    Order Defendant to make whole Nakia Sanford and a class of Black and non-Hispanic applicants and workers by providing compensation for pecuniary losses, including but not limited to cost to be incurred for the costs of seeking new employment, in amounts to be determined at trial.

     E.    Order Defendant to make whole Nakia Sanford and a class of Black and non-Hispanic applicants and workers by providing compensation for nonpecuniary losses, including emotional pain, suffering, inconvenience and mental anguish in amounts to be proven at trial.

     F.    Order Defendant to make and preserve all records, in accordance with the provisions of Section 709(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-8(c), relevant to the determination of whether unlawful employment practices have been or are being committed.

     G.    Order Defendant to pay punitive damages for its malicious and/or reckless conduct, in an amount to be determined at trial.

     H.    Grant such further relief as the Court deems necessary and proper in the public interest.

     I.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

FAYE WILLIAMS
TN Bar # 011730
Regional Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
1407 Union Avenue, 9th floor
Memphis, TN 3810
(901) 544-0088

C. EMANUEL SMITH
MS Bar #7473
Regional Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
1139 22nd Street, Suite 2000
Birmingham, AL 35205
(205) 212-2045

11