**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. ) 3:14-cv-00217-MPM-SAA ) |
| | ) |
| RESOURCE EMPLOYMENT SOLUTIONS, LLC. | ) ) ) |
| Defendant. | ) ) |

---

**PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

---

Plaintiff Equal Employment Opportunity Commission (Commission or EEOC) submits this Memorandum in Support of Its Response in Opposition to Defendant Resource Employment Solution, LLC's (Resource Employment Solutions or Defendant) Motion to Dismiss. The Commission requests that this Court deny Defendant's motion because;

(1)     Defendant has waived any argument regarding personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and this Court has personal jurisdiction over Defendant;

(2)     Evidence shows that Defendant employed Nakia Sanford and the claimants as employees under Title VII; and

(3)     Defendant has presented matters outside the pleadings and summary judgment is inappropriate because the parties have not engaged in discovery.

For the above reasons, the Commission requests that this Court deny the motion and allow the parties to proceed with discovery.

1

## RELEVANT PROCEDURAL AND FACTUAL HISTORY

On September 22, 2011, Nakia Sanford filed a charge of discrimination against Defendant. (Ex. 1, Charge and Notice of Charge). In her charge, Ms. Sanford alleged that Defendant denied her and a class of African-Americans regular assignment because of their race. (*Id.*) After investigating the charge, the EEOC issued its Letter of Determination on September 30, 2013. (Ex. 2, Letter of Determination). During the EEOC's more than two year investigation, Defendant provided evidence showing that it employed Ms. Sanford and the class of African-American employees. Defendant never denied employing Ms. Sanford and the class of African-American employees during the administrative investigative process.

On September 30, 2014, EEOC filed a Complaint against Defendant alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq.* (D.E. # 1). In the Complaint, the Commission alleges that Defendant refused to place and/or assign Ms. Sanford and a class of African-Americans because of their race and national origin. Rather, Defendant gave hiring preference to Hispanic workers. The Complaint also that Defendant retaliated against Ms. Sanford after she filed an EEOC charge of discrimination.

On March 10, 2015, more than sixty days after service of the Summons and Complaint was effected, and after receiving notice from the Clerk, the EEOC moved for entry of default under Fed. R. Civ. P. 55(c). (D.E. # 7). The Clerk entered the default against Defendant on March 11, 2015. (D.E. # 8). Defendant filed a motion to set aside the entry of default on April 9, 2015. (D.E. # 10). In the supporting memorandum, Defendant in fact admits that it employed Ms. Sanford and the class of African-American employees, stating "Resource believes that the

facts will show that any decisions it made as to employment of Nakia Sanford or the class of individuals was based on legitimate, non-discriminatory reasons." (D.E. # 11, p. 5).

Defendant filed its Answer on April 29, 2015. (D.E. # 18). The Court conducted a Case Management Conference and entered the Case Management Order on June 11, 2015. (D.E. # 27). Defendant filed the current motion to dismiss under Fed. R. Civ. P. 12(b)(2) and (6) on July 30, 2015. (D.E. # 39).

As discussed in detail below, Defendant's motion to dismiss fails and the Commission requests that this Court deny the motion.

## LEGAL ANALYSIS AND ARGUMENT

Defendant asserts that it did not employ Ms. Sanford or the class of African-American employees and seeks dismissal Fed. R. Civ. P. 12(b)(2) and (6). As discussed in detail below, Defendant's arguments fail under both provisions of the Rules.

I.  **Defendant has Waived Any Claim Regarding Personal Jurisdiction under Fed. R. Civ. P. 12(b) and this Court Has Personal Jurisdiction Over Defendant**

   A.  **Defendant Has Waived Its Right to Assert a Person Jurisdiction Challenge Under Fed. R. Civ. P. 12(b) Because Its First Responsive Pleading in this Litigation Failed to Assert this Defense**

Under Fed. R. Civ. P. 12(h) of the Federal Rules, a defendant must assert the defense of lack of personal jurisdiction in its "first defensive move, whether it be it a Fed. R. Civ. P. 12 motion or a responsive pleading." *Golden v. Cox Furniture Mfg. Co.*, 683 F.2d 115, 118 (5th Cir. 1982); *Broadcast Music, Inc. v. M.T.S. Enterprises,* 811 F.2d 278, 281 (5th Cir.1987); Fed. R. Civ. P. 12(h)(1). The consequence for failure to do so is waiver of the defense. 5C Wright and Miller, *Fed. Prac. & Proc. Civ.* § 1391 (3d ed.); *Cactus Pipe & Supply Co. Inc., v. M/V Montmartre,* 756 F.2d 1103, 1107 (5th Cir. 1985) ("The Fifth Circuit has held that the party must raise the defense of lack of personal jurisdiction in a motion under Rule 12 or in its first pleading

3

(whichever is first), otherwise the defense is waived").

A defendant does not preserve a personal jurisdiction defense in its answer simply by denying the jurisdictional predicates asserted in the complaint. Instead, courts within the Fifth Circuit have repeatedly found that a defendant must affirmatively assert its objection to the court's exercise of personal jurisdiction in the answer.

In *Mechanics Bank v. Bruno*, the court found that Defendant had waived its jurisdictional challenge when it failed to list "lack of personal jurisdiction" as an affirmative defense in its answer. *Mechanics Bank v. Bruno*, 2007 WL 2713387, at *1 (N.D. Miss. Sept. 13, 2007) ("The defendant from his initial pleading 'Affirmative Defenses and Motion to Stay' on December 1, 2006 through July 16, 2007 when he filed his answer never raised the defense either by Rule 12 motion or by listing it as an affirmative defense."). Similarly, in *Farmers Select, LLC v. United Motor Freight, Inc.*, the court found that the third-party defendant had waived its personal jurisdiction defense. Though the defendant in *Farmers Select* had stated in its answer that "it reserved any and all rights it may have under Federal Rule of Civil Procedure 12(b)" and though it had, in its answer, "[denied] the basis of jurisdiction and venue as plead[ed].", the court found those statements did not constitute assertions of a personal jurisdiction defense sufficient to preserve the defense. *Farmers Select, LLC v. United Motor Freight, Inc.*, No. EP-07-CV-342-DB, 2008 WL 5351731, at *3 (W.D. Tex. Dec. 19, 2008).

Cases where courts within the Fifth Circuit have found that defendants adequately preserved a personal jurisdictional defense confirm that a defendant must *specifically* state it is asserting this defense in the answer. *See Bailey v. Transp.-Commc'n Emp. Union*, 45 F.R.D. 444, 446-47 (N.D. Miss. 1968) (finding that defendant had not waived personal jurisdiction challenge where defendant had stated its personal jurisdiction objection in the answer); *see also*

*Classic Motel, Inc. v. Coral Grp., Ltd.*, 149 F.R.D. 528 (S.D. Miss. 1993) (finding defendant had not waived its personal jurisdiction challenge because it had asserted, among other things, the absence of personal jurisdiction in its answer).

In the present case, Defendant's first responsive pleading to the EEOC Complaint was an Answer filed on April 29, 2015. (D.E. # 18). Nowhere in this Answer does Defendant assert the Court's lack of personal jurisdiction as a defense. In fact, despite listing nineteen Affirmative Defenses in the Answer (many of which were not actual affirmative defenses), Defendant failed to assert the affirmative defense of "lack of personal jurisdiction." Consequently, Defendant has waived this defense. *Cactus Pipe & Supply Co. Inc., v. M/V Montmartre,* 756 F.2d 1103 (5th Cir. 1985).

Here, Defendant has also conducted itself in such a way as to accede to the Court's jurisdiction. Defendant has, for example, participated in the case management conference and conducted discovery in this case. (D.E. # 40). Defendant also attended the pretrial conference where it did not raise the issue of the Court's personal jurisdiction. (D.E. # 27).

Defendant may argue that its Nineteenth Affirmative Defense, which purports to reserve its "right to assert any and all other defenses not time-barred as this litigation progresses", preserved its right to assert a lack of personal jurisdiction. (*See* D.E. # 18, p. 8). This argument, however, fails for two reasons. First, a litigant cannot bypass the procedural requirements established in the Federal Rules of Civil Procedure merely by asserting that it reserves the right to do so in its answer. The order in which Rule 12 defenses must be asserted reflects a deliberate choice on the part of the drafters of the Federal Rules. "[T]he message conveyed by the present version of Rule 12(h)(1) seems quite clear. It advises a litigant to exercise great diligence in challenging personal jurisdiction, venue, or service of process. *Golden v. Cox Furniture Mfg.*

5

*Co.*, 683 F.2d 115, 118 (5th Cir. 1982).

The order contemplated by the rules would be meaningless if litigants were allowed to simply reserve the right to assert personal jurisdiction at a later, more convenient time. Second, *Famers Select* shows that such a broad reservation of rights does not satisfy the specificity required of parties asserting defenses under 12(b)(2)-(5) of the Federal Rules.

Defendant's failure to raise personal jurisdiction in its first defensive pleading and Defendant's continued availment of the jurisdiction of the court, deprives the court of the power to dismiss the case on this basis. *Flock v. Scripto-Tokai Corp.*, No. CIV.A.H-00-3794, 2001 WL 34111630, at *3 (S.D. Tex. July 23, 2001). Accordingly Defendant's motion to dismiss based on the lack of personal jurisdiction must be denied.

### B. Defendant's Fed. R. Civ. P. 12(b)(2) Motion Also Fails on the Merits

#### 1. *Legal Standard*

Alternatively, even if the Court were to find that Defendant has not waived its personal jurisdiction challenge, Defendant's Fed. R. Civ. P. 12(b)(2) motion fails on its merits. A Mississippi court may exercise personal jurisdiction over a non-resident if (1) Mississippi's long-arm statute confers jurisdiction over the defendant, and (2) the exercise of personal jurisdiction comports with the requirements of federal due process. *E.E.O.C. v. Vicksburg Healthcare, LLC*, No. 3:13CV895-KS-MTP, 2014 WL 4715463, at *2 (S.D. Miss. Sept. 22, 2014). Mississippi's long-arm statute provides that non-residents shall be subjected to the jurisdiction of Mississippi courts should the court "find that (1) the defendants entered into a contract with plaintiff to be performed in whole or in part in Mississippi; or (2) the defendants committed a tort, in whole or in part, against a plaintiff in Mississippi; or (3) the defendants were doing business in Mississippi." *Hanback v. GGNSC Southaven, LLC*, No. 3:13-CV-00288-MPM, 2014 WL

3530613, at *2 (N.D. Miss. July 15, 2014) (quotation and citation omitted).

Due process is satisfied under the Fourteenth Amendment to the United States Constitution when the Defendant has the minimum contacts necessary to establish either specific or general jurisdiction. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984).

> 2.    *The Commission has adduced evidence sufficient to show that Defendant was doing business in Mississippi during the relevant time and that Sanford's injuries, as well as the injuries to the class of African-American employees, arose out of an employment relationship with Defendant*

As discussed more fully below, Resource Employment Solutions conducted business in Tennessee and Mississippi by placing temporary workers at the FedEx SmartPost Mississippi worksite. *See* Section II.A, *infra*. Resource exercised supervision over the workers it placed at its Mississippi worksite. *Id*. Sanford's injuries stemmed directly from the discriminatory practices of Resource Employment Solutions and its management. (*See* D.E. # 1). These allegations are sufficient to establish a prima facie case of personal jurisdiction under both Mississippi's long arm statute and satisfy the minimum contacts test under the due process clause.

Resource Employment Solutions, in support of its Motion, has brought forward evidence stating that it was not authorized to do business in Mississippi or Tennessee until 2013. When Resource Employment Solutions *legally* began to do business in Mississippi is beside the point. The evidence adduced by the EEOC shows that Resource Employment Solutions was, in fact, conducting business in Tennessee and Mississippi in 2011 and 2012. *See* Section II.A, *infra*. The irrelevance of when Resource Employment Solutions became licensed to do business in Mississippi is made clear by the fact that the entity that Resource Employment Solutions claims hired Sanford and was her employer in 2011, Resource Staffing Inc., does not appear to have

even been licensed to do business in Mississippi until 2012.  (*See* Ex. 3, MS Secy of State docs ).

Alternatively, the minimum contacts needed for personal jurisdiction may also be imputed to Resource Employment Solutions under the successor liability or integrated enterprise theories.  The Commission has adduced evidence sufficient to create a genuine issue of fact as to whether Resource Employment Solutions is a successor in liability or integrated enterprise with Resource Staffing, Inc.  *See* Section II.B, *infra*.  "Federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."  *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002).  Thus under a successor employer or integrated enterprise or alter ego theory, the contacts of the predecessor or alter ego would be imputed to Resource Employment Solutions.  *See Berry v. Lee*, 428 F.Supp.2d 546 (N.D. Tex. 2006) (finding personal jurisdiction over a foreign parent company based on control parent exercised over its Texas subsidiary).

### 3. *In the alternative, the EEOC requests leave to conduct discovery on the issue of personal jurisdiction*

Finally, should the court find that the EEOC has not established a prima facie case of personal jurisdiction, the Commission asserts that leave to conduct discovery is the next appropriate step.  A court may decide the jurisdictional issue by receiving affidavits, depositions, interrogatories, and other forms of discovery.  *See Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000).  Where the motion to dismiss raises issues of fact, as Defendant's Motion to Dismiss does here, discovery on matters of personal jurisdiction should be permitted.  *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982).  Here, facts that are directly

relevant to the issue of personal jurisdiction are almost entirely within the possession of Defendant and affiliated entities. Allowing the Commission discovery on jurisdiction would serve a clear purpose and would add significant facts that would enable the court to rule on the issue. Accordingly, if the Court finds that Defendant has not already waived its personal jurisdiction defense, and that the EEOC has not made a prima facie case on the issue of personal jurisdiction, the EEOC respectfully requests leave to conduct discovery on the issue of jurisdiction.

**II.    Resource Employment Solutions, LLC is the Proper Defendant in this Enforcement Action and Its Fed. R. Civ. P. 12(b)(6) Motion Fails**

**A.    Resource Employment Solutions Was the Employer of Nakia Sanford and the Class of African-American Employees**

Defendant contends that the EEOC's Title VII claim should be dismissed because it did not employ Ms. Sanford or the class of African-American employees. In support of its claim, Defendant submits an affidavit from the current CEO of Resource Employment Solutions, Louis Lluberes, claiming that Resource Employment Solutions "did not begin to do business in Tennessee and Mississippi until at least two years after the allegations giving rise to the lawsuit occurred" and that "Resource Employment was not the employer of Nakia Sanford in 2011." (Def. Ex. 1, Lluberes Aff. ¶¶ 8, 10).

Contrary to Defendant's assertions, the record reveals that Resource Employment Solutions *was* Ms. Sanford's employer, as well as the employer of the class of African-American employees, and thus Defendant is a proper party to the case, as alleged in the EEOC complaint. Given the evidence in the record supporting the EEOC's position, Defendant cannot meet its burden under Rule 56 to show that there is an absence of any genuine factual dispute on the issue

9

of employer identity.[1]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### 1.    *Title VII Definition of Employer*

Title VII defines an employer "as a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person."  42 U.S.C. §2000e(b). Defendant meets this definition, thus the Court must analyze whether an employment relationship exists between the Ms. Sanford and the class of African-American employees and the Defendant.  *Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007).   In determining whether an "employment relationship" exists between the plaintiff and the defendant, the Fifth Circuit applies a hybrid economic realities/common law control test.  *Id.*   "The most important component of this test is the right to control the employee's conduct.  When examining the control component, we have focused on whether the alleged employer has *the right to hire, fire, supervise, and set the work schedule* of the employee."  *Id.* (emphasis added).

Resource Employment does not dispute that it is an entity engaged in an industry affecting commerce with fifteen or more employees. (*See* D.E. # 18, ¶ 4).  There is also significant evidence indicating that Defendant had an employment relationship with Ms. Sanford and class members. Specifically, the record shows that Ms. Sanford applied for employment with Defendant; that Defendant placed Ms. Sanford (and other African-Americans) at the Mississippi FedEx SmartPost worksite; that Defendant had the power to alter assignments/placements; and that Defendant terminated Ms. Sanford from employment.

---

[1] Under Rule 12(d) of the Federal Rules, Defendant's Motion to Dismiss, by relying on matters outside the pleadings in support of its Motion, should be automatically converted into a Motion for Summary Judgment.  *See* Section II.C, *infra*; *see also Clark v. Tarrant Cnty., Texas*, 798 F.2d 736, 746 (5th Cir.1986).  Even if the Court, at this early stage in the litigation, believes Defendant has satisfied its burden the appropriate action under Fed. R. Civ. P. 56 is not dismissal of the suit, but deferral of consideration of the motion to permit the Commission to develop relevant information not currently in its possession.  Fed. R. Civ. P. 56(d); *see* Section II.C, *infra*

2.    *Ms. Sanford (and the class of African-American employees) applied for work to Resource Employment Solutions, LLC*

When Sanford applied for work at Resource Employment Solutions her application was for employment with "Resource Employment Solutions." (*See* Ex. 4, Employment Application, EEOC-ID-000048-49) ("Resource Employment Solutions is an equal opportunity employer and will not discriminate in the hiring process . . . "). Ms. Sanford submitted her application to the Memphis Office for placement at the Mississippi worksite.

During the EEOC investigation into its employment practices, Resource Employment Solutions produced a large number of employment applications submitted to its Memphis Branch Office for the years 2011 and 2012 for placement at the Mississippi worksite. All of these applications – similar to Ms. Sanford's application – were for work with "Resource Employment Solutions."

Resource Employment Solutions' own website makes clear that it was responsible for placing temporary employees at the FedEx SmartPost location in or around 2011. The "Company Kudos" section of its website currently contains a statement from the Hub manager for FedEx SmartPost stating that "They have done a great job providing us with the best candidate that I've seen in some time." The posting is dated June 13, 2011, the same time period during which Sanford began working at the FedEx Smart Post facility. (*See* Ex. 5, Resource Employment Solutions Webpage).

3.    *Resource Employment Solutions terminated Ms. Sanford's Employment and controlled her assignment opportunities*

In or around March of 2012, Ms. Sanford received a letter from Resource Employment indicating it was "rejecting her for placement" with the company based on the results of a

11

background check.  (*See* Ex. 6, email dated 3/28/2012, EEOC-ID-000039-47) (also noting that the background check was conducted by Infomart on behalf of "FedEx SmartPost Vendor – Resource Employment").  Because Ms. Sanford was already working for Resource Employment at the Mississippi FedEx location, this letter effectively terminated her employment.[2]  The letter revoking Sanford's ability to work at the Mississippi worksite came from Resource Employment Solutions' Human Resources Department. (*Id*. at EEOC-ID-000041).  The heading on the letter is "Resource Employment Solutions."  The letter is signed "Human Resources Department."  The address listed at the bottom of the letter is Resource Employment Solutions LLC's former corporate address, 6101 Chancellor Dr., Ste 150, Orlando, Fl, 32809.  (*See* Def. Ex. 3 (listing this same address in Resource Employment Solutions, LLC's corporate papers)).

Resource Employment Solutions itself recognized that it had control over Ms. Sanford's employment in this exchange with the EEOC.  In explaining the situation to the EEOC, Maribel Gonzalez, Director of Human Resources for Resource Employment Solutions in 2012 stated: "*We* are rejecting her placement at client location, but not telling her that employment is terminated."  (Ex. 6, email dated 3/28/2012, EEOC-ID-000039) (emphasis added).  That Resource Employment Solutions did, in fact, exercise decisive control over Sanford's employment is shown by the fact that Sanford received no more assignments after receiving this letter from Resource Employment Solutions.  Notably, Resource Employment Solutions sent Sanford this letter rejecting her for placement more than a year before Resource Employment Solutions now claims it began doing business in Mississippi and Tennessee.

> 4. *Defendant's conduct during the EEOC investigation indicates that it was Ms. Sanford's (as well as the class of African-Americans') employer*

During a more than two-year investigation into the employment practices at its Tennessee

---

[2] FedEx Smart Post was the Memphis Branch's only client.  Therefore being rejected for placement at that worksite meant Sanford could no longer be assigned to work for Resource Employment Solutions.

and Mississippi locations, Resource Employment Solutions consistently held itself out to the EEOC as the employer. At no point during the lengthy investigation by the EEOC, or through the conciliation process, did Resource Employment Solutions ever represent to the EEOC that it was anything but Ms. Sanford's direct employer, despite many opportunities to do so.

The EEOC sent notice of Sanford's charge of discrimination to Rebecca Meija, Branch Manager for Resource Employment Solutions in Memphis, TN. (Ex. 1, Charge and Notice, EEOC-ID-000002). Rebecca Meija's email address during this time period was rebecca_m@resourceemployment.com. (Ex. 7, email dated 9/20/2011, EEOC-ID-000062-63).

Despite EEOC sending notice of the Charge to Rebecca Meija in the Memphis Branch office, Maribel Gonzalez, located in Resource Employment Solutions' Florida headquarters, was the EEOC's main point of contact with Defendant during the investigation. Gonzalez responded to the Charge of Discrimination, regularly corresponded with the EEOC regarding the EEOC's investigation into the Charge, and provided documents in response to EEOC requests for information. The signature on all of Gonzalez's correspondence with the EEOC states that Gonzalez is the "Corporate Human Resources Director for Resource Employment Solutions." (Ex. 8, email dated 2/2/2012, EEOC-ID-000064). Gonzales' email address is maribel_g@resourceemployment.com, the identical domain as Rebecca Meija, the Branch manager of the Memphis office, who received notice of the Charge.

The preceding is significant for at least a couple of reasons. First, a natural and reasonable inference, from the fact that Ms. Meija, Branch Manager of the Memphis Office and Gonzalez, a self-identified employee of Resource Employment Solutions, shared the same domain name (@resourceemployment.com), is that they both worked for Resource Employment Solutions. Given that Ms. Sanford worked out of the Memphis office and was placed in

Mississippi through the Memphis office, this is further evidence that Resource Employment Solutions had an employment relationship with Ms. Sanford. Second, because Resource Employment Solutions negotiated with the EEOC regarding allegations of employment discrimination arising out of Sanford's employment in Mississippi through the Memphis office, and never raised the issue that it was not Sanford's employer and negotiating with the EEOC as if it was, support the inference that Resource Employment Solutions was Sanford's employer.

> 5. *During its correspondence with the EEOC, Defendant provided documents and information that create a reasonable inference it was Sanford's employer*

Documents and information Resource Employment Solutions produced during the EEOC investigation all point to the conclusion that it was Sanford's employer.

> a. The October 31, 2011 spreadsheet Resource Employment Solutions provided to the EEOC shows that Resource considered itself to have an employment relationship with Ms. Sanford and the class of African-Americans

In October of 2011, Gonzalez responded to EEOC requests for information regarding the operations of its Memphis office. (Ex. 9, email dated 10/31/2011, EEOC-ID-000005). Gonzalez's email to the EEOC contained two attachments. One was a spreadsheet detailing applicant flow data for Resource Employment Solution's Memphis, TN branch covering the period January 2011 through October 2011. (Ex. 10, Employee Spreadsheets, EEOC-ID-000008-32). The spreadsheet notes that "R was not active" in January 2011 and that "R became active" in February 2011. Ms. Sanford is listed in the data as an applicant. (*Id.* at EEOC-ID-000019). The spreadsheet is labeled "Resource Employment Solutions."

> b. Ms. Sanford's onsite supervisor at the Mississippi worksite worked for and was under the control of Resource Employment Solutions

The second attachment to Gonzalez's October 31, 2011 email is a letter from Victor

Heredia.  In the letter Heredia describes himself as an "On site Supervisor of the Memphis Hub" and indicates that though he "did not promise a promotion" to Nakia Sanford, she is a "good hard working *employee*."  (Ex. 11, Heredia Statement, EEOC-ID-000006) (emphasis added).  The statement is on letterhead indicating it comes from Resource Employment Solutions.  The address listed on the letter is Resource Employment Solutions LLC's former corporate address, 6101 Chancellor Dr., Suite 150, Orlando, FL 32809.  (*See* Def. Ex. 3 (listing this same address in Resource Employment Solutions, LLC's corporate papers)). The domain name printed on the letter is resourceemployment.com, the same domain name used by Ms. Gonzalez, Resource Employment Solutions Corporate HR Director and Rebecca Meija, Branch Manager of Resource Employment's Memphis office.  The statement is dated October 26, 2011, two years before Defendant, Resource Employment Solutions, claims it was doing business in TN and MS. This document further supports the inference that Resource Employment Solutions was Sanford's employer.

> c. The Feb 2, 2012 payroll reports provided by Resource Employment  Solutions to the EEOC labeled Ms. Sanford and the class of African-Americans as employees of Resource Employment Solutions

On February 2, 2012, Gonzalez, Corporate Human Resources Director for Resource Employment Solutions, sent payroll reports to the EEOC for Resource Employment's TN branch office.  Gonzalez wrote "attached please find the requested reports for our TN branch office." (Ex. 8, email dated 2/2/2012, EEOC-ID-000064) (emphasis added).  The attached spreadsheet contains a partial employee list for "Resource Employment Solutions' FedEx SmartPost – Memphis," detailing each employee's ID number, name, title, start date, end date, and hours. The list contains employee start dates as early as February 2011.  Nakia Stanford is listed as an active employee of Resource Employment Solutions with (ID # 112245). Ex. 12, FedEx

SmartPost spreadsheets, EEOC-ID-000542-5433). Her start date as an employee is listed as June 2011. (*See id.* at EEOC 000542-543).

> d. Worker Sign-in sheets at Sanford's Mississippi worksite were labeled "Resource Employment Solutions"

During the investigation Resource Employment Solutions provided one of the sign in sheets used at the Mississippi worksite. It is labeled "Resource Employment Solutions" and dated 11/8/11. (*See* Ex. 13, Sign-in Sheet, EEOC-ID-000568).

> e. Statements by Resource Employment Solutions during the EEOC investigation give rise to a reasonable inference that it had an employment relationship with Sanford

A number of Gonzalez's comments in her correspondence with the EEOC, give rise to a reasonable inference that Resource Employment Solutions had an employment relationship with Ms. Sanford and the class of African-Americans. Specifically, e-mails from Resource Employment's Corporate Human Resources Department confirm that Resource Employment Solutions exercised control over the Memphis Branch office which assigned Sanford to the FedEx Smart Post location in Mississippi, and that Resource Employment Solutions had the power to hire, terminate, and assign Sanford.

While Defendant argues that it did not have a presence in Memphis during the time of Ms. Sanford's employment, Gonzalez, regularly refers to the TN branch office as "our branch." (Ex. 14, email dated 2/7/2012, EEOC-ID-000034) ("Attached please find the requested reports for our TN branch office."); (Ex. 8, email dated 2/2/2012, EEOC-ID-000064) (same); (Ex. 15, email dated 9/18/2013, EEOC-ID-000059) ("Below you will find the answers to your questions regarding our TN branch office as provided by our Director of Operations). In explaining why she has not been able to provide requested information in a timely manner, Gonzalez refers to the

TN branch office as "the local office." (Ex. 16, email dated 3/22/2012, EEOC-ID-000036). Gonzalez repeatedly refers to FedEx Smart Post as "our client." (Ex. 17, email dated 2/7/2012, EEOC-ID-000035); (Ex. 6, email dated 3/28/2012, EEOC-ID-000039). Gonzalez explains in another email that Ms. Sanford has been treated like "any other employee." (Ex. 17, email dated 2/7/2012, EEOC-ID-000035). That Resource Employment Solutions referred to Ms. Sanford as an employee, that it repeatedly referenced the Memphis office, through which Ms. Sanford was hired and assigned work in Mississippi as "our" office, supports the inference that Resource Employment Solutions was Ms. Sanford's employer, as well as the employer of the class of African-Americans.

Significantly, Gonzalez, Human Resources Director for Resource Employment Solutions in Florida, writing to the EEOC in March of 2012 regarding Ms. Sanford's employment status, writes that "*We* are rejecting her placement at client location, but not telling her that employment is terminated." (Ex. 6, EEOC-ID-000039) (emphasis added). This is clear evidence that Resource Employment Solutions had the power to terminate Sanford and assign or not assign her to work at the FedEx Mississippi location. Indeed, Ms. Sanford received no more assignments from the Memphis Branch after Resource Employment indicated it was rejecting Sanford for placement.

Thus Defendant's contention that it was not Ms. Sanford's employer is contradicted by evidence indicating that it had the power to hire and fire Ms. Sanford, that it exercised control over her employment, that Sanford's direct supervisor worked for Resource Employment Solutions, that Sanford was listed as working for Resource Employment Solutions on the reports it sent to the EEOC, that the Memphis Branch Manager worked for Resource Employment Solutions, and that applications for work in the Memphis office were applications for

17

employment with Resource Employment Solutions. Resource Employment Solutions cannot claim now that the EEOC has sued the wrong employer when it consistently represented itself as Sanford's employer and defended itself during the investigation as if it were her employer. EEOC has offered enough evidence, even at this early stage of litigation before the parties have responded to written discovery requests, to create a dispute of fact as to whether Resource Employment Solutions was Ms. Sanford's employer, as well as the employer of the class of African-Americans.

      **B.**      **Defendant Has Presented Matters Outside the Pleadings and Summary Judgment is Inappropriate Because the Parties Have Not Engaged in Discovery**

Pursuant to Fed. R. Civ. P. 12(d), if "matters outside the pleadings are presented to and not excluded by the Court, the motion [to dismiss] must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Summary judgment should only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Summary judgment is not appropriate where essential facts are not available to the nonmovant. "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

"A continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Wichita Falls Office Associates v. Banc One Corp.*, 978 F.2d 915,

919 (5th Cir. 1992) (internal quotations and citations omitted).  Courts have noted that the length of the discovery period is an important factor in summary judgment.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (noting that the requirement that party opposing summary judgment set forth specific facts showing there is genuine issue for trial "is qualified by [the] provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition").

Defendant has attached in support of its motion, a Declaration of Louis Lluberes, CEO of Resource Employment Solutions, LLC, an Application for Certificate of Withdrawal from Tennessee for Resource Staffing, Inc. and, corporate filing information for Resource Employment Solutions, LLC for Tennessee and Mississippi.  Accordingly, Defendant has raised matters outside the pleadings, automatically converting its motion into a Fed. R. Civ. P. 56 summary judgment motion.  Fed. R. Civ. P. 12(d).

In its Response, the Commission has attached a number of exhibits in support of its position.  The Commission asserts that it has adduced sufficient information to establish that Defendant is the correct employer in this Title VII enforcement action, or that there is a genuine issue of fact on this point.  *See* Section II.A, *supra*.  Should the Court find that the Commission has not adduced sufficient evidence on the issue of employer identity to create a genuine dispute of fact, Commission respectfully requests the court delay ruling on this point to allow the Parties time to conduct discovery on the issue.

The Commission is not in possession of additional relevant facts needed to oppose Defendant's Motion.  This is not through any lack of diligence on the part of the EEOC.  While the parties have exchanged their first set of written discovery in this litigation, the Commission served its discovery before Resource Employment Solutions filed the present Motion.  (*See* D.E.

# 35, 36, 37). Therefore, the Commission has not had an opportunity to conduct discovery on the issue of employer identity. The Commission requests that the Court allow it:

- to propound written discovery seeking the identity of the officers, directors, principals of Resource Staffing, Inc. and Resource Employment Solutions LLC and any other affiliated entities;

- to depose these individuals (as well as Maribel Gonzalez);

- to review the purchase agreement for the transaction between Resource Staffing, Inc. and Resource Employment Solutions, LLC that Defendant claims took place in 2013;

- to seek discovery on the financial status and corporate history of both entities and any affiliated entities;

- to seek discovery regarding the identity of employees who worked for these entities and affiliated entities; and

- to seek discovery of payroll data for these entities.

(Ex. 18, McCoy Declaration). Almost all of the knowledge or discovery sought by the Commission is within the hands of Defendant.

Additionally, the Commission believes that further discovery could also form the basis for liability under the successor liability or integrated enterprise theories.

The successor doctrine arises in the context of discrimination cases in situations where the assets of a defendant employer are transferred to another entity. Thus, the purpose of the doctrine is to ensure that an employee's statutory rights are not "vitiated by the mere fact of a sudden change in the employer's business." The doctrine allows the aggrieved employee to enforce against the successor a claim he could have secure against the predecessor." *Rojas v. TK*

*Communications, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996) (citing *Brennan v. Nat'l Tel. Directory Corp.*, 881 F.Supp. 986, 992 (E.D. Pa. 1995) (citations omitted)).

The Fifth Circuit has identified nine factors to be considered in determining successor liability:  (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.  *Id.* (citing *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir.1974)).

Under the integrated enterprise theory, "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise:  a single employer." *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).  "Factors considered in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  *Id.*

While the Commission asserts that there is ample evidence to show that Resource Employment Solutions was in fact the direct employer, there is also sufficient evidence to allow discovery with regard to successor liability and/or integrated enterprise.

As to successor liability, evidence shows that Resource Employment Solutions had clear notice of the claim and, in fact, provided significant employment information throughout the

EEOC's administrative investigation. Further, there is a continuity of business operations and the use of the same work force, with jobs under similar working conditions.

As to integrated enterprise, the evidence shows that Resource Employment Solutions and Resource Staffing are affiliated entities with common ownership and management. In his declaration, Louis Lluberes claims that he had no financial stake or interest in Resource Staffing prior to March 2013. This is simply false. Evidence shows that Louis Lluberes served as an Incorporator, Vice President, and COO for Resource Staffing from 1997 through at least 2013. (Ex. 19, Resource Staffing Corporate Filings). Evidence also shows a centralized control of labor relations, as Ms. Gonzalez, Corporate Human Resources Director for Resource Employment Solutions, handled the EEOC's administrative investigation.

The Commission required further discovery, through both written discovery and depositions of the management officials for Resource Employment Solutions and Resource Staffing, in order to be able to fully develop evidence with regard to these theories of liability. (Ex. 18, McCoy Declaration).

Accordingly, the Commission requests that this Court deny Defendant's motion and allow the parties to engage in discovery.

## **CONCLUSION**

Based on the foregoing and for the reasons outlined herein, the Commission contends that Defendant's motion dismiss fails. The Commission requests that this Court deny Defendant's motion to dismiss and allow the parties to engage in discovery.

Respectfully Submitted,

**P. DAVID LOPEZ**
General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

**FAYE A. WILLIAMS**
Regional Attorney
TN Bar No. 011730

**GERALD L. THORNTON**
Supervisory Trial Attorney
TN Bar No. 15898

/s/ Matthew H. McCoy
**MATTHEW H. McCOY**
Trial Attorney
IN Bar No. 29368-49
matthew.mccoy@eeoc.gov

**EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**
1407 Union Avenue, Suite 901
Memphis, TN 38104
(901) 544-0070

**C. EMANUEL SMITH**
Regional Attorney
MS Bar No. 7473

**MARSHA L. RUCKER**
Supervisory Trial Attorney
PA Bar No. 90041

**CHRISTOPHER WOOLLEY**
Trial Attorney
CA Bar No. 241888

**EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
(205) 212-2045

23

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 17, 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Robbin W. Hutton
FORD HARRISON LLP
1715 Aaron Brenner Drive, Suite 200
Memphis, TN 38120


/s / Matthew H. McCoy
Matthew H. McCoy
matthew.mccoy@eeoc.gov