**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **3:14-cv-00217-MPM-SAA** |
| | ) | |
| **RESOURCE EMPLOYMENT SOLUTIONS, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**PLAINTIFF UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MEMORANDUM IN SUPPORT OF FIRST MOTION TO COMPEL DISCOVERY**

---

## I.      INTRODUCTION

The EEOC asserts that Resource Employment Solutions, LLC, a temporary staffing agency ("Resource" or "Defendant"), discriminated against Nakia Sanford ("Sanford" or "Charging Party") and a class of temporary workers on the basis of race and/or national origin. D.E.#1. During the relevant time period, Resource, supplied Federal Express with temporary workers for its Fed Ex Smart Post facility in Southaven, Mississippi. Resource instructed its temporary laborers to report to the Southaven worksite each day and congregate outside the work area prior to each shift. Resource supervisors and/or Team Leads then selected those individuals who would work that day, sending the rest home.  The EEOC alleges the selection process systematically favored Hispanic workers over Black, non-Hispanic workers.  When Sanford complained about the selection process to Resource supervisors, and to the EEOC by filing a Charge of Discrimination, Resource refused her a promised promotion and terminated her.

In support of its allegations, the EEOC propounded written discovery requests seeking information concerning Defendant's supervisory/management structure, corporate policies, procedures, decision-making, financial data, electronically stored payroll and personnel information, and emails.

Defendant has not provided complete answers to the EEOC discovery requests, nor has Defendant produced relevant electronically stored information (ESI). Defendant's continued refusal to provide responses and relevant ESI delays resolution of this lawsuit and prejudices the EEOC's ability to develop its case. Accordingly, the EEOC now, pursuant to Rule 37(a), seeks a Court Order compelling Defendant to produce the financial information that the EEOC has requested, and produce the electronically stored information the EEOC has requested, in the format the EEOC has requested, covering the time period the EEOC has requested.[1]

## II.     BACKGROUND

On July 28, 2015 the EEOC served its First Set of Interrogatories and First Set of Requests for Production on Defendant. D.E. #35, 37. Exhibits 1 and 2. In its request, the Commission sought Resource payroll and personnel ESI (and relevant email communications). This information was sought so that the Commission could engage its expert to conduct a statistical analysis of the work patterns of Resource temporary employees sorted by race/national origin. At Defendant's request, the EEOC agreed to an extension of the due date. Defendant served its responses to the EEOC discovery requests on September 10, 2015. Exhibits 3 and 4.

Notwithstanding the extension, Defendant's responses were deficient. Defendant **failed to produce even a single document**. Instead, Defendant merely asserted a laundry list of boiler plate objections and stated that it would produce responsive documents at some unspecified

---

[1] EEOC, at this time, seeks to compel production of complete answers to Plaintiff EEOC's First Set of Request for Production Nos. 9, 12,13,15,19,20.

future date. Exhibit 4.

On December 11, the EEOC, having received no further word from Defendant on any forthcoming supplementation, wrote Defendant, detailing the deficiencies in Defendant's discovery responses. The EEOC requested Defendant supplement its responses by December 21, 2015. Exhibit 5.

On December 16, 2015 the parties conferred by telephone regarding Defendant's deficient responses. At that time, the EEOC agreed to grant Defendant an extension for supplementation to January 4, 2016. During this conference Defendant indicated that Resource's ADP data and email data had been preserved and that it would produce them.

On January 5, 2016 Defendant served Plaintiff with its Supplemental Response to Plaintiff's First Request for Production of Documents. Exhibit 6. Notwithstanding the second agreed to extension, Defendant failed to produce any ESI, despite earlier representations that ESI existed and had been preserved.[2] Moreover, almost all of the documents Defendant submitted with its Supplemental Response to the EEOC Requests for Production consisted of documents from the EEOC investigative file, documents that the EEOC had already turned over to Defendant several months earlier. Those documents Defendant did produce, it did not produce in the format specified by the EEOC in its Requests for Production.

### III.     COMPLIANCE WITH LOCAL RULE 37

The EEOC attempted to resolve the issues in this motion through written and telephone communication. *supra*, Section II. Background.

On February 25, 2016 the EEOC itemized outstanding issues in an email correspondence and requested a Good Faith Certificate. Defendant responded the next day requesting that the

---

[2] Defendant has not included a privilege log with any of its responses to the EEOC discovery requests. Therefore Defendant has waived any objections on the basis of privilege/work product. Miss. L.U.Civ.R. 26(a)(1)(C). *See E.E.O.C. v. HWCC-Tunica, Inc.*, No. CIV.A. 2:07CV171-B-A, 2008 WL 4533906, at *2 (N.D. Miss. Oct. 6, 2008)

parties confer during the first round of claimant depositions. Plaintiff's Request and Defendant's Response are attached as Exhibit 7. The parties conferred on March 5, 2016. During this conference, Plaintiff agreed to narrow the temporal scope of Requests for Production Nos. 19, 20 from 2010 through 2014 to 2010 through 2013. Defendant indicated that additional paper (as opposed to electronic) supplementation was forthcoming. Defendant has, since that meeting, indicated that it is agreeable to disclosing financial information provided the EEOC enter into a protective order. However, as of the date of filing of this Motion the parties have not agreed to the terms of any protective order or that Defendant will provide all of the information the EEOC seeks in Request No. 9. Moreover, due to the impending expert deadline, Plaintiff cannot continue to wait on Defendant's piecemeal supplementation (and non-electronic supplementation) of its responses to the EEOC requests for personnel and payroll data.

Based on Defendant's stated positions, the EEOC has concluded the parties cannot fully resolve these matters without the Court's intervention. Pursuant to Rule 37(a) of the Local Rules, a declaration, in lieu of a Good Faith Certificate, is attached as Exhibit 8.

## IV. DISCOVERY STANDARDS

Under Federal Rule of Civil Procedure 37(a), a party may move for an order compelling disclosure where another party fails to respond to a discovery request. An evasive or incomplete response must be treated as a failure to respond. Fed. R. Civ. P. 37(a)(4). *Dollar v. Long Mfg., NC, Inc.*, 561 F. 2d 613, 616 (5th Cir. 1977).

Rule 26(b)(1) provides that parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Under Rule 26(b)(1), the information sought need not be admissible to be discoverable. *Id.*

In assessing "proportionality" several factors outlined in Rule 26(b)(1) weigh in favor of allowing broad, far reaching discovery in employment discrimination cases, particularly cases brought by the EEOC. Congress and the federal courts have long emphasized the importance of the issues at stake in EEOC litigation. When "the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Gen. Tel. Co. of the Northwest, Inc., v. EEOC*. 446 U.S. 318, 326 (1980). Congress has characterized the public interest in equal employment opportunity as an "overriding public interest." 118 Cong. Rec. 4941 (1972), cited in, *Gen. Tel. Co. of the Northwest, Inc* 446 U.S. at 326; *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975)("in an EEOC case the discovery scope is extensive").[3]

Moreover, employment discrimination litigation by its very nature often requires extensive, far reaching discovery. Because these cases turn largely on complicated inferences concerning an employer's state of mind, broad latitude in discovery is more crucial in employment discrimination cases than perhaps any other type of case. *Trevino v. Celanese Corp.*, 701 F.2d 397, 406 (5th Cir. 1983). The employer will almost always control nearly all relevant discovery: for example, copies of corporate policies, relevant emails, access to company witnesses and decision makers. Where, as here, the EEOC seeks to conduct a comparative statistical analysis of the working patterns of a large group of temporary workers to support an inference of discrimination, Defendant controls all of the needed inputs (payroll and personnel data) for such an analysis.

---

[3] Here, the amount in controversy is significant. The EEOC has, to date, named thirty-five individuals as part of the class of aggrieved individuals Resource discriminated against.

The discovery concepts outlined above apply equally to discovery of electronically stored information (ESI). Under Rule 34(b)(1)(C) of the Federal Rules, requesting parties may "specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). Even where the requesting party fails to specify the form for producing ESI, the responding party "must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii). The requesting party may move to compel production format if unsatisfied with the form provided by the responding party. Fed. R. Civ. P. 34, Advisory Committee Notes on the 2006 Amendments.

## V.    <u>LEGAL ARGUMENT</u>

### A.    **Defendant's General Objections are Meritless and Should Be Waived**

Defendant prefaces its "Response to Plaintiff's First Request for Production" and its "Supplemental Response to Plaintiff's First Request for Production" with a litany of boilerplate, general objections which purport to object to each discovery request "to the extent" that the request calls for various categories of information.[4] In its Response to Plaintiff's First Request for Production, Defendant, for example, asserts seven general objections that apply "to the extent that" the EEOC requests seek documents that variously:  are protected by attorney-client or work product privilege, are not relevant, are overly broad, seek documents belonging to Resource Staffing, and seek documents involving confidential proprietary information. In each response to each request for production, Resource then purports to incorporate by reference all of its general objections "as if stated herein." These general objections are meritless on their face and this Court should not consider them in ruling on the present motion to compel. *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 538 (D. Kan. 2006)(deeming general objections waived and

---

[4] *See, e.g.*, Exhibit 6, pp. 2-3, Defendant's Supplemental Response (asserting eight objections "to the extent" that they call for certain categories of information).

ordering litigant to respond to each interrogatory and request for production without consideration of his purported general objections).

The assertion of a general objection "to the extent" that it applies has "long been disfavored by federal courts." *Gonzalez v. Volkswagen Grp. of Am., Inc.*, No. A-14-CV-574-LY-ML, 2015 WL 5097271, at *2 (W.D. Tex. Aug. 28, 2015); *Hall v. La.*, Civ. A. No. 12-657-BAJ-RLB, 2014 WL 2560579, at *1 (M.D.La. June 6, 2014); s*ee also Price v. Lockheed Martin Corp.*, No. 4:04CV123LN, 2006 WL 1686568, at *1 (S.D. Miss. June 19, 2006) ("[i]n this District the prohibition against general objections has been long established.")(citing cases). Rather, Rule 33 and 34 require that a party object to discovery requests with specificity. Fed. R. Civ. P. 33(b)(4), 34(b). When an objecting party fails to do so, according to the plain text of the Federal Rules, it does not adequately preserve its objection. *Id.*

Defendant's "to the extent that" objections are precisely the kind of abstract, theoretical objections that courts, applying Rule 33 and 34, have found inadequate and deemed waived due to their lack of specificity. Because Resource has made "no meaningful effort to show the application of any such theoretical objection to any request for discovery" its "general objections are considered mere hypothetical or contingent possibilities." *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (internal quotes and citation omitted). Resource has "left Plaintiff and the Court guessing as to how each of [its] general objections applies to the particular document requests." *Heller*, 303 F.R.D. 466, 483. This is inadequate to preserve its objections.

This Court should follow the example of other courts in this District and in the Fifth Circuit by deeming Defendant's general objections waived and refusing to consider them.

**B.    The Court Should Allow Plaintiff a Temporal Scope of Discovery Consistent with the Claims and Defenses at Issue in This Case**

Defendant objects to Request for Production Nos. 12, 13, 15, 19, 20 as temporally overbroad, stating that the relevant time period in this case is limited to February 2011 through November 2011 because "the allegations relate to the time period from February 2011 to November 2011." Defendant's narrow construction of the relevant time period in this litigation ignores typical practice in employment discrimination cases and unfairly hinders the EEOC's ability to discover information relevant to the claims and defenses of the parties.

In employment discrimination cases, discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and reasonably calculated to lead to the discovery of admissible evidence. *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652 (D. Kan. 2006). Courts commonly extend the temporal scope of discovery to a reasonable number of years both prior to and following such period. *E.E.O.C. v. Kan. City S. Ry.*, 195 F.R.D. 678, 679 (D.Kan.2000)(three years prior to the time the discriminatory conduct was alleged to have occurred and one year after is relevant). *Vann v. Mattress Firm*, No. CIV.A. H-12-3566, 2014 WL 1365943, at *3 (S.D. Tex. Apr. 7, 2014)("Numerous courts have held that information outside of the statute of limitations is relevant as background information to establish discrimination").

Within the Fifth Circuit, in particular, courts typically allow discovery covering a four to five year timeframe. *E.E.O.C. v. HWCC-Tunica, Inc.*, No. CIV.A. 2:07CV171-B-A, 2008 WL 4533906, at *8 (N.D. Miss. Oct. 6, 2008) (compelling defendant to provide information for a five-year timeframe). *Clemons v. Dollar Gen. Corp.*, No. CIV.A. 2:09-CV-64, 2010 WL 1994809 (N.D. Miss. May 18, 2010)(compelling discovery for a four-year time period). *Cormier v. PPG Indus. Inc.*, 452 F. Supp. 594,595 (W.D. La. 1978)(five years prior to effective date of claim was reasonable).

Defendant's argument that the relevant time period is February 2011 through November 2011 because "the allegations relate to the time period from February 2011 to November 2011" is misguided, in the first place, because the allegations in this case at a minimum extend to 2012. Resource hired Sanford in 2011 but effectively terminated her in 2012. The EEOC alleged in its Complaint that Resource terminated Sanford in 2012 in retaliation for her complaints of discrimination. Further, the employment of many of the aggrieved individuals, whom Resource discriminated against, extends from 2011 into 2012. Thus Defendant's employment policies and practices in 2011 and 2012 directly bear on the claims and defenses at issue in this litigation.

Finally, Defendant itself has broadened the permissible temporal scope of discovery by asserting that it was not Sanford's employer. D.E. #38, 39 (Defendant's Motion to Dismiss and Memorandum in Support). Specifically, Resource has alleged that Resource Staffing, Inc., not Resource Employment Solutions, LLC, employed Sanford, and that Resource Employment Solutions, LLC, purchased all or substantially all of the assets of Resource Staffing Inc., in 2013. As a result, Resource has brought the doctrine of successor liability into play, requiring the EEOC to conduct discovery on that issue.

Successor liability turns on whether (1) there is a substantial continuity of business operations from the previous entity to its successor; whether (2) the successor had notice of the charge of discrimination or pending litigation; and (3) the successor's ability to provide relief. *Valdez v. Celerity Logistics, Inc.*, 999 F. Supp. 2d 936, 940 (N.D. Tex. 2014). In determining whether there has been a "continuity of business operations" courts look to factors such as whether "[]whether the new employer uses the same plant; [] whether he uses the same or substantially the same work force; [] whether he uses the same or substantially the same supervisory personnel; [] whether the same jobs exist under substantially the same working

conditions; [] whether he uses the same machinery, equipment, and methods of production; and [] whether he produces the same product." *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996) (citing *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir.1985)).[5]

Establishing successor liability in this case, then, requires a comparison of policies, practices, personnel, financial status of the two entities both before and subsequent to the alleged 2013 transaction. The EEOC cannot establish successor liability without expanding the scope of discovery a reasonable time beyond the alleged March 2013 purchase of assets. Especially where the requested discovery bears on the continuity of business operations and the financial condition of the Defendant, the EEOC is entitled to obtain this discovery.[6]

Accordingly, this Court should overrule Defendant's objections as to time in response to the EEOC Requests for Production that are the subject of this Motion to Compel.

## C.    Defendant's Failure to Produce Relevant Payroll and Personnel Data

The Commission, via Requests for Production, first requested electronically stored personnel and payroll information on July 27, 2015. To date, Defendant has refused to produce all relevant payroll and personnel ESI despite all indications that such data exists and has been preserved.[7]

In accordance with Local Rule 37(b), Plaintiff here sets forth, in immediate succession, each request "to which this motion is addressed, Defendant's response, and the reasons assigned as supporting the motion." Miss. L.U.Civ.R. 37(b).

---

[5] Although these factors were originally set out as distinct, courts analyzing the doctrine of successor liability have consolidated these factors under the "continuity of business operations" query. *Valdez v. Celerity Logistics, Inc.*, 999 F. Supp. 2d 936, 942 (N.D. Tex. 2014)

[6] The EEOC has narrowed the temporal scope of its requests to 2010-2014, one year after the alleged 2013 purchase of the assets of Resource Staffing. *See* Exhibit 7.

[7] *See* Exhibit 3, Defendant's Answer No. 16 to Plaintiff's First Set of Interrogatories stating that "Defendant has maintained all files and data bases pertinent to this matter. *See also* Exhibit 6, Defendant's Supplemental Response Nos. 12, 13, to Plaintiff's First Set of Requests for Production indicating that Defendant has no documents responsive to these requests "with the exception of the data maintained in ADP and Outlook", but <u>not</u> producing this data.

**Request for Production No. 12**: With respect to any electronically stored information that has been used by Resource Employment Solutions, LLC, to record personnel information on any employees, either temporary or permanent, employed by Resource Employment Solutions, LLC, and placed at, referred to, assigned to the FedEx Smart Post or any other worksite where Defendant placed, assigned, referred, or supplied workers through Defendant's office(s) located in Memphis, Tennessee) during the period of January 1, 2010, to the present inclusive, please produce:

a) **The first ten pages of data from any reports regularly generated or printed from the electronically stored information where the report contains any personnel information.**

b) **Any record layout, data dictionary, or other document that identifies or describes the records or fields in any file or table that contains personnel information.**

c) **Any coding sheets, code books, or other documents used to interpret or explain codes or abbreviated entries for personnel information.**

d) **Hard-copy printouts of any look-up tables that explain coded or abbreviated entries for any personnel information.**

e) **Any manuals, guidebooks, or instructions describing the computer program, file, or database containing personnel information.**

f) **Any operator manual or data entry manual for the computer program, file, or database, or any other documents that describe or show the screens displayed when accessing the program, file, or database containing personnel information.**

g) **Any documents which identify the name, model number, operating system, configuration and location of the computer used to create, access, modify or otherwise process the computer program, file, or database containing personnel information.**

h) **Any documents which identify the medium on which the computer program, file, or database containing personnel information is stored, e.g., tape, hard disk, or CD.**

**Defendant's Response to Request for Production No. 12**: Defendant incorporates by reference its general objections, as if stated herein. Defendant objects on the basis that the request is overbroad as to time, since the allegations relate to time period from February 2011 to November 2011. Defendant objects to this interrogatory on the basis that it is overbroad as to scope. Defendant objects to this request on the basis that it is impermissibly compound to the extent that it ask for separate categories of information. Subject to and without waiving any objections, Defendant will produce non-privileged responsive documents to the extent such

documents are in the Defendant's possession, custody, or control and can be located after a reasonable search.

**Defendant's Supplemental Response to Request for Production No. 12:** Subject to and without waiving any objections, Defendant does not have any electronically maintained documents from February 2011 to December 2011 responsive to Request No. 12, with the exception of the data maintained in ADP.

**Reasons assigned as supporting the motion:** In its Supplemental Response, Defendant identifies one database containing relevant personnel data, but does not produce any of the documents or information sought by the EEOC in RPD No. 12 pertaining to this database.

This Request seeks documents related to any system/databases Defendant has used to record personnel information (including databases containing payroll) regarding employees Resource's Memphis Branch Office assigned to the Fed Ex Smart Post worksite, or other worksites, from 2010 to 2014.[8] Specifically, it requests manuals, guidebooks or instructions that describe any such database(s) and the records or fields that the database(s) contain. The request seeks data dictionaries, lookup tables, coding sheets and similar documents that will explain coded or abbreviated entries for any personnel information contained in the database(s). Lastly the request seeks copies of the first ten pages of data from any reports regularly generated or printed from these databases.

The request is reasonably calculated to lead to the discovery of admissible evidence. It is aimed at providing our experts enough information to understand the databases Defendant used to record personnel information and what kinds of personnel information these databases recorded. This information will be useful to the EEOC in crafting additional, more specific

---

[8] The EEOC has narrowed the temporal scope of this request to 2010-2014, one year after the alleged 2013 purchase of the assets of Resource Staffing. *See* Exhibit 7.

requests or analyzing the ESI Defendant produces. The EEOC ultimately seeks payroll and personnel data so that its expert can conduct a statistical analysis on the work patterns and earnings of Resource's temporary employees.

Through its request for documents that identify or describe "any record layout, data dictionary, or other documents that identifies or describes the records or fields in any file or table" the EEOC is requesting pertinent, readily accessible information that will aid in Plaintiff's interpretation of abbreviations and terms used in the database(s). Each database is different, and users typically utilize unique codes, abbreviations, or other short-hand to populate the record fields of their particular database. This information is necessary to understand Defendant's database construction and the information contained therein. These types of documents are generally provided by the software developer or are maintained in hardcopy format, or should be readily accessible by the database administrators.

With respect to the request for manuals, look-up tables, coding sheets, operator or data entry manuals guidebooks, or instructions that describe the database and its records or fields, these documents should be readily available. Even if Defendant does not maintain formal training manuals or guidebooks, it is difficult to believe that they do not have (or have access to) documentation that aid in interpreting the terms and abbreviations maintained in, or generated by their database(s).

It is similarly difficult to believe that Defendant cannot produce "the first ten pages of data from any reports regularly generate or printed" from the ADP database. Presumably some reports are generated regularly from this database. This is exactly the type of document the EEOC is requesting through Request No. 12.

Defendant objects to this request on the basis that it is compound and overbroad as to scope and time.

Request No. 12 is not compound. Local Uniform Civil Rule 26(d) provides that a "specific interrogatory/request and its reasonably related subpart will be counted as one interrogatory/request." The alleged discrete subparts clearly illustrate a "direct relationship" to each other, and therefore should not be counted separately under Local Rule 26(d). *See Clark v. Burlington Northern Rr.*, 112 F.R.D. 117, 118 (N.D. Miss. 1986). Here the Request seeks all documents related to any of Defendant's databases where personnel information on employees who were assigned to FedEx Smart Post is stored. The subparts describe, with more particularity, the specific types of database related documents Plaintiff seeks.

Request No. 12 is not overbroad as to scope. Defendant objects to this Request presumably because it seeks information regarding the Memphis Branch Office's practices in the placement of temporary employees at sites other than Fed Ex Smart Post. Such a Request is reasonably calculated to lead to evidence supporting an inference of discrimination in this case. In a disparate treatment claim, an employer's pattern and practice of discriminatory conduct "may be helpful to a determination of whether the alleged discriminatory act against plaintiff conformed to a general pattern of discrimination against members of a protected group." *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1135 (5th Cir. 1983)(internal quotations and citation omitted).

Here, Defendant's Memphis Branch Office is the source of the complained of discrimination. Defendant has implied that the discrimination at the Fed Ex Smart Post location was the result of one rogue Team Lead. Plaintiff has alleged that, at least at the branch level, Defendant was aware of the discrimination and perpetuated it. *See* D.E.#1, pp. 5-6. A pattern or

practice of discrimination in placements at other facilities by the same decision-makers at the same Memphis Branch Office that discriminated in the allocation of work at the Fed Ex Smart Post facility is thus directly relevant. *Goforth v. Terex Corp.*, No. 2:07-CV-093-P-A, 2008 WL 942610 (N.D. Miss. Apr. 7, 2008). It supports an inference that Defendant intentionally discriminated against Sanford and the other aggrieved individuals, and can be used to show the pretextual nature of any non-discriminatory justifications proffered by Defendant. "When a motive or intent of a defendant employer is at issue, information concerning its conduct towards employees other than the plaintiff is relevant." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653-54 (D. Kan. 2006)(finding region-wide discovery permissible in scope where wrongdoing was alleged to have occurred at a regional level within Defendant's organizational structure).

Request No. 12 is not overbroad as to time. Information regarding the database(s) Defendant used to store personnel information from 2010 to 2014 is relevant to the claims and defenses at issue in this case. Payroll and personnel data from 2010 to 2014 is relevant for the reasons stated in the previous two paragraphs above: such data can be used to help support an inference of discrimination by the Memphis Branch Office. Request No. 12 is calculated to lead to the discovery of such payroll and personnel data because it seeks information regarding any databases Defendant has used that house this data.

The requested time period is also appropriate because successor liability is an issue in this case. Where successor liability is at issue, the inquiry, by necessity, involves a comparison of the present entity with the alleged predecessor in interest, focusing on the workforce and supervisory/management personnel. *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 750 (5th Cir.

1996). A time period covering 2010 to 2014, one year after the alleged 2013 purchase took place would allow the EEOC to make a showing on the continuity of business operations.

The EEOC respectfully requests that the Court compel Defendant to answer Request No. 12.

**Request for Production No. 15**: For all persons who applied at Defendant's Memphis office(s) for placement as temporary workers in the Memphis and/or North Mississippi area (including but not limited to placement at the FedEx Smart Post facility) during the period from January 1, 2010, through the present, produce all electronically stored information, computerized files, and databases containing any personnel information (as defined above) whether stored generated, or processed by Defendant or by any other entity under contractual or other arrangements, on mainframe computers, "mini"-computers, network servers, personal computers, or other similar electronic equipment, including but not limited to the following:

    a.    All database tables from any human resource or payroll system.

    b. If not otherwise provided, all database tables used to access, extract, process, export, or copy any computerized personnel information transferred at any time to the Defendant's expert(s).

    c. If not otherwise provided, all database tables from archival backup databases or files (such as monthly, quarterly, and end-of-year "snapshot" files) from any TMC Corp. human resource or payroll system.

    d.    If not otherwise provided, all database tables containing personnel transactions including, but not limited to,

    (1)  effective date(s);
    (2)  "present" ("from") and "change to" values; and
    (3)  employee change codes (both alphanumeric values, e.g., "3107," and descriptive labels, e.g., "SEASONAL, PART-TIME HIRE"); showing, among other items, any and all changes in a person's employment conditions (including, but not limited to, changes in amounts and types of compensation, job titles, salary grades, work and project assignments, performance evaluations, leave, promotions, transfers, benefits, termination, and rehiring).

    e. If not otherwise provided, all electronically stored applicant files, including basic demographic information such as name, address, telephone number, social security number and the information regarding the following: job skill information, job history information, any comments, resume search, cumulative hours, payroll information, job offer, and placement information.

**f. If not otherwise provided, all payroll records.**

**g. If not otherwise provided, all database tables used in the normal course of business to produce computer-generated reports containing personnel information. The data tables produced in response to Request No. 15 should be produced on compact disks and may be written in one of the following formats: MS-Access, dBase, Paradox, Quattro Pro, Fox Pro compatible files or as Excel spreadsheets where the number of rows in the table does not exceed the maximum allowed in such a format. If it is not possible to produce the tables in one of these formats, they should be produced as ASCII delimited files, accompanied by appropriate documentation. Appropriate documentation includes the name of each field, its location within a record, a complete and accurate description of the contents of each field and does not contain any unexplained codes, terms, or abbreviations, the number of bytes contained in each file, a log of any queries used to import or export data and a definition of any unexplained codes, terms, or abbreviations in an automated format, such as Excel. Production of "appropriate documentation" means you should also produce any operator manual or data entry manual for the database, or any other documents that describe or show the screens displayed when using the database or when entering information.**

**Defendant's Response**: Defendant incorporates by reference its general objections, as if stated herein. Defendant objects on the basis that the request is overbroad as to time, since the allegations relate to time period from February 2011 to November 2011. Defendant objects to this interrogatory on the basis that it is overbroad as to scope. Defendant further objects to this request on the basis that it seeks information regarding individuals who "applied," which is not relevant to claim or defense of the parties, nor is it likely to lead to the discovery of admissible evidence. Defendant further objects to this request on the basis that it is impermissibly compound to the extent that it ask for separate categories of information. Subject to and without waiving any objections, Defendant will produce non-privileged responsive documents to the extent such documents are in the Defendant's possession, custody, or control and can be located after a reasonable search.

**Defendant's Supplemental Response:** Subject to and without waiving any objections, Defendant does not have any electronically stored documents from February 2011 to December 2011 responsive to Request No. 15, see Resource000736-1311.

**Reasons assigned as supporting the motion:** This request essentially seeks electronic payroll and personnel data for all individuals who applied for placement through Defendant's Memphis Branch Office from January 2010 through to 2014.[9]

The information requested is relevant. The central claim in this case is that Defendant's work selection/placement process discriminated against Black and/or non-Hispanic temporary workers and favored Hispanic temporary workers; as a result, Black, non-Hispanic, employees received fewer work opportunities on the basis of race/national origin, resulting in lower earnings. Defendant's discriminatory selection process may, in part, manifest itself in a race-based disparity in hours worked by Hispanic and Black temporary employees. Making such a showing requires access to, and analysis of, Defendant's payroll data. It also requires the EEOC to understand the universe of employees hired by Resource during the relevant period, including information such as name, dates of hire, EEO categorization, date of separation.

Request No. 15 is not impermissibly compound. Rather it contains seven subparts that are reasonably related to the Request. Pursuant to Local Uniform Civil Rule 26(d), "[a] specific interrogatory/request and its reasonably related subpart will be counted as one interrogatory/request." *See Clark v. Burlington Northern Rr.*, 112 F.R.D. 117, 118-19 (N.D. Miss. 1986) (quotations and citations omitted) (finding that an "interrogatory is to be counted as but a single question for purposes of [the Local Rules], even though it may call for an answer containing several separate bits of information, if there is a direct relationship between the various bits of information called for." Specifically, Request No. 15 seeks all ESI containing personnel/payroll information for all persons who applied at Defendant's Memphis office for placement as a temporary worker from 2010 to 2014. The subparts to this Request merely

---

[9] The EEOC has narrowed the temporal scope of this request to 2010-2014, one year after the alleged 2013 purchase of the assets of Resource Staffing. *See* Exhibit 7.

provide specific examples of the type of data sought and the requested format of such data. Each of these subparts is reasonably related to the same topic—electronically stored information related to all those who applied for a position at Defendant's Memphis Branch Office.

Defendant objects to the request for production because it seeks information from those who <u>applied</u> for temporary positions through Defendant's Memphis Branch Office and covers the time period from January 2010 to present.

Request No. 15 is not overbroad as to scope. The EEOC seeks data regarding those who <u>applied</u> for two reasons. First, the EEOC alleges some individuals who applied were hired, but were not able to secure work because of Defendant's discriminatory selection process. These individuals do not appear on the payroll. These individuals nevertheless would be part of the class of individuals who were discriminated against. Absent the production of personnel data on those who applied, the EEOC would have no way of finding such individuals though they are unquestionably relevant to the litigation.

Second, Defendant's hiring practices are relevant in supporting the EEOC's contention that Defendant terminated Sanford in retaliation for her complaints of discrimination. Defendant has argued that it terminated Sanford due to the results of a criminal background check. Defendant, in support of its assertion, has provided the names of other individuals who were also terminated as a result of their background check. A review of the applications of these individuals shows that they did not reveal that they had a criminal history in their employment applications, while Sanford did. Discovery regarding applicants is reasonably calculated to the discovery of additional individuals who had a criminal history and were treated differently than or similarly to Charging Party.

The Request is not overbroad as to time. The composition of Defendant's workforce both before and after the alleged 2013 Purchase Agreement bears on the continuity of business operations. Because the successor liability inquiry, by necessity, involves a comparison of the present company with the alleged predecessor in interest, including a comparison of the workforce and supervisory/management personnel before and after the alleged partial purchase, the time period over which the Request seeks information regarding Defendant's payroll and personnel data is proper.

Defendant's supplemental response claims that Defendant "does not have any electronically stored documents from February 2011 to December 2011 responsive to Request No. 15" and directs the EEOC to Resouce000736-1311. Those documents (Resource000736-1311) simply consist of paper employment applications that the EEOC acquired during its administrative investigation and produced to Defendant earlier in this litigation.

Defendant's stance that it does not have payroll or personnel ESI is strange given that it admits, in Supplemental Response Nos. 12, 13, that it has personnel data maintained in an ADP database. Defendant's stance that there is no responsive electronic data also makes no sense given that the document production that accompanied its Supplemental Response contained paper payroll records for a majority of the ten original class members the EEOC has named, documents that it had not previously produced.[10] *See, e.g.,* Exhibit 9 (Resource000043-50). These records contain much of the data the EEOC seeks for *all* applicants: dates worked and hours worked for every week that these individuals were employed by Resource. *Id.*

Even these few payroll records Defendant has produced, it has produced in paper, rather than the format requested by the EEOC. Further, Defendant failed to produce these records for

---

[10] The new, selected production of these documents in paper form suggests that there is a database that contains this information, not only for the individuals for whom this information was produced, but for all temporary Resource applicants or employees, covering the relevant time period.

all of the temporary employees who worked through Defendant's Memphis Branch Office during the time period as specified by the request. It is simply not believable that Resource does not have **any** payroll records from the years 2010 through 2014.

The EEOC respectfully requests the Court compel Defendant to produce all payroll and personnel ESI in accordance with Request No. 15.

**D.      Defendant's Failure to Provide Requested Email Data**

**Request for Production No. 13**: Any documents or electronically stored information that describe Defendant's e-mail system during the period January 1, 2010, to the present, including but not limited to:
   **a. Any documents or electronically stored information that describe Defendant's email system(s).**
   **b. Any documents or electronically stored information that describe a system for preserving or backing up e-mails, including any policy or procedure for re-use of backup media.**
   **c. Any documents or electronically stored information that describe a system for purging or erasing e-mails.**
   **d. Any documents or electronically stored information that describe a system or method for retrieving e-mails that have been deleted from users' individual computers.**

**Defendant's Response:** Defendant incorporates by reference its general objections, as if stated herein. Defendant objects on the basis that the request is overbroad as to time, since the allegations relate to time period from February 2011 to November 2011. Defendant objects to this interrogatory on the basis that it is overbroad as to scope by use of "any" documents. Defendant further objects to this request on the basis that it is impermissibly compound to the extent that it ask for separate categories of information. Subject to and without waiving any objections, Defendant will produce non-privileged responsive documents to the extent such documents are in the Defendant's possession, custody, or control and can be located after a reasonable search.

**Defendant's Supplemental Response**: Subject to and without waiving any objections, Defendant does not have any documents from February 2011 to December 2011 responsive to Request No. 12 [sic] with the exception of the data maintained in ADP and outlook.

**Reasons assigned as supporting the motion**: This Request seeks information regarding Defendant's email system and the methods and protocols for backing-up the system, purging emails, and email retrieval.[11] This information should be readily available to Defendant. Even if Defendant does not have any written protocols as to email retention, back up and retrieval, at a very minimum there should be some document or electronic record that identifies the email system used by Defendant. This information is unquestionably relevant. Knowledge concerning Defendant's email system, back up and retrieval policies and practices will allow the EEOC to determine where relevant ESI may be stored and may be relevant to issues of spoliation. *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003). *Maggette v. BL Dev. Corp.*, No. CIV.A. 2:07CV181-M-A, 2009 WL 4346062, at *1 (N.D. Miss. Nov. 24, 2009) (appointing third party expert to determine whether a corporation legitimately fulfilled its discovery obligations where corporation was unable to describe the databases searched, the search terms, methods or parameters used to search the databases).

Request No. 13 is not impermissibly compound. Rather it contains five subparts that are reasonably related to the Request. The five subparts to this Request merely provide examples of the type of documents sought that would be responsive to the Request intended to aid Defendant in the production of documents responsive to the Request. Each of these subparts is reasonably related to the same topic—documents or electronically stored information that will explain the operation (including the storage and backup systems) of Defendant's email system.

---

[11] The EEOC has further narrowed the temporal scope requested emails from 2010 through 2013 when the parties conferenced on March 5.

Nor is there any reason to limit this request temporally. The EEOC does not only seek documents from Feb 2011 – Dec 2011 that describe Defendant's email system. That limit incorrectly presumes that that is the relevant time period in this litigation. *See* Section V.B. of this Memorandum. Further, documents after that time period describing Defendant's email system and back up and retrieval protocols are just as relevant. They are likely to lead to information concerning where the EEOC's experts may search for relevant emails.

**Request for Production No. 19**: **All e-mails sent or received by the following persons during the period from January 1, 2010, through the present, that relate to or reference Defendant's account with FedEx Smart Post, or placements of employees at the FedEx Smart Post location:**

**(a) Suly Lara**
**(b) Victor Heredia**
**(c) Rebecca Mejia**
**(d) Jorge Lomelin**
**(e) Isabella Esmeralda**
**(f) Maribel Gonzalez**
**(g) Jihan Romero**
**(h) Adriana Castro**
**(i) Tamika Burchett**
**(j) Gus (Last Name Uknown)**
**(k) Patrick Chism**
**(l) Jamekia Durham**
**(m) Meko Hardaway**
**(n) Mia Drain**
**(o) Yumika Durham**
**(p) Louis Lluberes**
**(q) Moises Lluberes**

**The electronically stored information produced in response to Request No. 19 should be produced in the native format (viz. "PST" files), with all metadata and attachments intact. If email has been purged or deleted from active storage at any time since January 1, 2010, the PST files should be restored from backup tapes generated from January 1, 2010 through the present.**

**Defendant's Response**: Defendant incorporates by reference its general objections, as if stated herein. Defendant objects on the basis that the request is overbroad as to time, since the allegations relate to time period from February 2011 to November 2011. Defendant

objects to this interrogatory on the basis that it is overbroad as to scope. Defendant further objects to this request on the basis that it is impermissibly compound to the extent that it ask for information from numerous individuals. Subject to and without waiving any objections, Defendant will produce non-privileged responsive documents to the extent such documents are in the Defendant's possession, custody, or control and can be located after a reasonable search.

**Defendant's Supplemental Response:** Subject to and without waiving any objections, See Resource000016-141, 62-735.

**Reasons assigned as supporting the motion:** Request No. 19 seeks emails related to Defendant's placement of temporary employees at Fed Ex Smart Post or emails referencing Defendant's account with Fed Ex Smart Post over the 2010 through 2013 time period.[12] Specifically this request seeks emails sent or received by individuals who are in a management/supervisory role for Resource and/or are likely to have responsive, relevant emails.

**Victor Heredia**, **Rebecca Mejia**, **Adriana Castro**, **Gus**, are all Resource management personnel who worked out of the Memphis Branch Office or, at times, on site at the Fed Ex Smart Post facility. The EEOC has reason to believe that each of these individuals received complaints regarding Defendant's discriminatory work selection practices. Moreover, all of these individuals were in a position to shape Defendant's placement/work selection policies and practices. **Maribel Gonzalez** was HR Director for Resource and was in a position to receive complaints regarding discrimination. And **Moises Lluberes** and **Luis Lluberes** are officers and/or owners of the company. Emails by or between these management officials discussing

---

[12] The EEOC, at the March 5 2016 conference, further narrowed the temporal scope of this request to the 2010 through 2013 time period.

Defendant's placement of temporary employees is relevant and discoverable in an action challenging its placement practices as discriminatory.

**Suly Lara**, **Isabella Esmerelda**, **Jihan Romero** were team leads who worked at the Fed Ex Smart Post facility and selected among the temporary workers who congregated daily outside the Fed Ex Smart Post work area. Emails by these employees discussing the company's Fed Ex account and placement practices in an action challenging the selection process as discriminatory, is clearly relevant.

**Jorge Lomelin**, is a management official for Labor Force, a staffing agency with whom Resource subcontracted to provide additional workers to the Fed Ex Smart Post facility. The EEOC has at least one email Lomelin sent to Rebecca Mejia, relaying that two Labor Force employees had complained to him about racial discrimination by Resource in the work selection process. *See* Exhibit 10, Email from Jorge Lomelin, Labor Force, to Rebecca Mejia, Resource Employment Solutions. A request for emails by or from Lomelin regarding placements at the Fed Ex Smart Post facility is reasonably calculated to the discovery of additional relevant emails.[13]

In response to Request No. 19, Defendant produced Resource 000016-141, 162-735. The initial issue the EEOC has with Defendant's production is that the emails and attachments contained within these Bates ranges were not produced in the format specified by the EEOC in the request. The EEOC very clearly specified that emails should be produced in native format with metadata and attachments intact. *See* Exhibit 2, Request for Production No. 19. Given that Defendant stated in response to Interrogatory No. 16 that "Defendant has maintained all files and data bases pertinent to this matter." Defendant should be able to produce relevant emails in the

---

[13] The EEOC has withdrawn its request for emails from Tamika Burchett, Patrick Chism, Jamekia Durham, Meko Hardaway, Mia Drain, and Yumika Durham. *See* Exhibit 7

format the EEOC has requested.

Indeed, some of the documents Defendant has produced support the conclusion that Defendant should be able to produce relevant emails, in the format requested by the EEOC. Defendant has, for example, produced emails between Maribel Gonzalez, HR Director of Resource Employment Solutions and Demetrica Stovall, the EEOC Investigator who conducted the investigation of Sanford's Charge of Discrimination. The content of the emails Defendant has produced is the same as the content of the emails produced by the EEOC. However some of the emails produced by Defendant contain headers that indicate that they were printed from the email of Maribel Gonzalez, i.e., indicating that Defendant extracted and printed these emails from its own database and not from the EEOC production. *Cf.* Exhibit 11 (EEOC-ID-000058-000061) *with* Exhibit 12 (Resource000026-30). This suggests Defendant retains control over this email database and should be able to produce emails in the electronic form specified by the EEOC.

Second, the emails and attachments contained within the Bates ranges Defendant specifies in its Supplemental Response to the EEOC Requests for Production are limited to *correspondence between the EEOC investigator and Resource management during the EEOC investigation*. Much of this correspondence was turned over by the EEOC to Resource several months ago. In other words, Resource has simply produced to the EEOC information that the EEOC already has and that Resource knows the EEOC already has. *Cf.* Exhibit 13 (EEOC-ID-000035) *with* Exhibit 14 (Resource000168)[14]

This unambiguous request seeks relevant information and Defendant cannot claim any confusion as to what information the request seeks. It is simply **<u>not believable</u>** to think that the

---

[14]These emails are identical (the footer, for example is the same) except that the header indicating the custodian of the email has been blurred out from Defendant's version and the EEOC Bates Stamp has been removed from Defendant's version (causing some of the footer to be whited out) and changed.

only emails Defendant has, by or between the listed custodians, from 2010 to 2013, regarding placements at Fed Ex Smart Post facility or the Fed Ex account are emails the EEOC investigator and Resource exchanged during the EEOC investigation, concerning the EEOC investigation. That would mean that there were *never* any internal email discussions between Resource management regarding the placement process at the Fed Ex Smart Post facility or the Fed Ex account, *never* any internal email discussions between management regarding the EEOC investigation (Defendant has not claimed that it is withholding any documents on the basis of any privilege and has not provided a privilege log to the EEOC in its discovery responses), *never* any email discussions between onsite team leads and other supervisory personnel regarding the selection/ placement process, and never any email discussions between these individuals regarding any complaints of discrimination. [15] Clearly, either Defendant has not been forthcoming in its discovery responses or Defendant has not actually searched for relevant emails.

Defendant also objects that the request is overbroad as to time and scope. With respect to the time period, the EEOC reurges the arguments made in Section V.B. of this Memorandum. With respect to scope, Defendant does not identify exactly why a request for emails exchanged by decision-makers regarding Defendant's placement practices at Fed Ex Smart Post are overbroad in scope in an action challenging those placement practices as discriminatory. "Merely stating that an interrogatory is 'overbroad' does not suffice to state a proper objection. Instead, the objecting party must specify which part of a request is overbroad, and why." *Franklin v.*

---

[15] The EEOC already knows this is not the case. For example, the EEOC is in possession of a copy of an email from Jorge Lomelin to Rebecca Mejia complaining about discrimination in the work selection process by Resource. *See* Exhibit 10. The EEOC acquired this email during the initial investigation of Sanford's Charge of Discrimination. Defendant **should have** produced an electronic copy of this email in the format specified by the EEOC with all metadata intact in response to EEOC Request Nos. 19 and 20. Defendant has not even produced this email that Defendant knows the EEOC has. One wonders how many other highly relevant, incriminating emails Defendant is also refusing to produce.

*Smalls*, No. 09CV1067 MMA RBB, 2012 WL 5077630, at *26 (S.D. Cal. Oct. 18, 2012)(overruling overbreadth objection on the grounds that objecting party did not specify why the request was overbroad).

Finally Defendant argues that this Request is impermissibly compound because it seeks information (emails) from numerous individuals. The objection makes no sense in this context because the enumeration of custodians ("by or between the following individuals") serves to *limit* the scope of the request, not expand it. The EEOC, in other words, could have just as easily crafted Request No. 19 to ask for all emails in Defendant's custody and control regarding placements at Fed Ex Smart Post. Such a request would not be compound. (*See* Request No. 20, which Defendant does not object to as compound). Given that such a request would clearly not be considered compound, Defendant cannot argue that a similar but narrower Request is compound.

The EEOC respectfully requests the Court compel Defendant to produce all ESI in accordance with Request No. 19.

**Request for Production No. 20**: **All e-mail received at any time from January 1, 2010 through the present regarding the placement of temporary employees at the FedEx Smart Post worksite (or any other worksite where Defendant placed, assigned, referred, or supplied workers through Defendant's office(s) located in Memphis, Tennessee). The electronically stored information produced in response to Request No. 8 should be produced in the native format (viz. "PST" files), with all metadata and attachments intact. If email has been purged or deleted from active storage at any time since January 1, 2010, the PST files should be restored from quarterly backup tapes generated from January 1, 2010 through the present.**

**Defendant's Response:** Defendant incorporates by reference its general objections, as if stated herein. Defendant objects to this interrogatory on the basis that it is overbroad as to scope on the basis that it seeks "all" emails at "any" time." Defendant objects on the basis that the request is overbroad as to time, since the allegations related to time period from February 2011

to November 2011. Defendant further objects to this request on the basis that it is unduly burdensome. Subject to and without waiving any objections, Defendant will produce non-privileged, responsive documents to the extent such documents are in the Defendant's possession, custody, or control and can be located after a reasonable search.

**Defendant's Supplemental Response:** Subject to and without waiving any objections, there are not any documents responsive to this request from February 2011 to December 2011.

**Reasons assigned as supporting the motion**:  Here, the EEOC reiterates its arguments as to the relevance of the emails sought in Request No. 19.[16]  This case alleges systemic discrimination in Resource's placement/selection process.  Emails discussing Defendant's Memphis Branch Office's placement practices are clearly relevant and calculated to lead to the discovery of admissible evidence.  Such emails have the potential of clarifying Defendant's awareness and perpetuation of discrimination in the placement process.  As with Request No. 19, it is simply not believable to think that Defendant has no emails regarding its Fed Ex Account or the placement process at the Fed Ex Smart Post facility. As state above, the EEOC knows of at least one such email that Defendant has not produced in response to Request No. 20. *See* Exhibit 10.

Defendant objects that Request No. 20 is "overbroad as to scope on the basis that it seeks "all" emails at "any" time." Plaintiff has stated this discovery request with reasonable particularity, requesting all documents pertaining to a specific category of information (emails regarding placements by the Memphis Branch Office) and covering a specified time period. Such requests are not objectionable. *McKellips v. Kumho Tire Co.*, 305 F.R.D. 655,681 (D. Kan. 2015) (rejecting overbreadth objection as to use of the word "all" in document request).

---

[16] The EEOC, at the March 5 2016 conference, further narrowed the temporal scope of this request to the 2010 through 2013 time period.

Defendant further objects to Request No. 20 on the grounds that it is unduly burdensome. As the party resisting discovery, Defendant has the burden to show facts justifying this objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002). Defendant has made no showing regarding the burden of complying with this request.

The EEOC respectfully requests the Court compel Defendant to produce all ESI in accordance with Request No. 20.

**E.      Defendant's Failure to Provide Relevant Financial Data**

**Request for Production No. 9:** A copy of Defendant's financial statements, including its Profit and Loss Statements, Income Statements, Balance Sheets, and Federal Income Tax returns from January 1, 2009 to the present.

**Defendant's Response:** OBJECTION. Defendant objects to this request on the basis that it seeks documents that are not relevant to a claim or defense of the parties, nor is it likely to lead to the discovery of admissible evidence, since Plaintiff has set forth only a conclusory demand for punitive damages. Subject to and without waiving any objection, relevant non-privileged documents, will be made available to Plaintiff at a time and in a manner that the Court deems appropriate.

**Defendant's Supplemental Response:** Subject to and without waiving any objections or foregoing objections, Defendant further states that it is a privately held company and that at this time there are no facts to support punitive damages. The Complaint makes a conclusory statement regarding punitive damages. Therefore, the financial information is not relevant, and

upon a showing of facts that would support a finding of punitive damages, Defendant will produce the financial information in a manner as directed by the Court to protect the privacy of Defendant's financial information.

**Reasons assigned as supporting the motion**:  The Court should compel the production of the requested financial information. This information is discoverable, in the first instance because the EEOC seeks punitive damages in this suit and has plausibly alleged a case for punitive damages. Second, Defendant has opened the door to financial discovery by asserting that it did not employ Sanford. Establishing Resource's liability as a successor employer requires the EEOC to conduct discovery on the financials of any predecessor or successor entity.

Courts within this district have routinely ruled that a plaintiff's counsel should have financial information about the defendant going into the trial where punitive damages are at issue. *E.E.O.C. v. HWCC-Tunica, Inc.*, No. CIV.A. 2:07CV171-B-A, 2008 WL 4533906, at *8 (N.D. Miss. Oct. 6, 2008)(compelling production of defendant's financial statements, balance sheets and P&L statements over a period of several years); *Clemons v. Dollar Gen. Corp.*, No. CIV.A. 2:09-CV-64, 2010 WL 1994809, at *1 (N.D. Miss. May 18, 2010)(compelling production of   financial information); *Smith v. Schmidt & McGarland Firm*, No. CIV.A. 3:06CV25-B-A, 2008 WL 1716646, at *1 (N.D. Miss. Apr. 9, 2008)(awarding fees to movant and compelling production of financial information for attorneys' eyes only). "It is only fair that [the plaintiff]'s counsel have some idea of the nature and extent of the net worth of [the defendant] going into the trial; moreover, if the documentation presented is deficient, [the plaintiff]'s counsel should have the means to correct that before trial". *Liberty Mut. Ins. Co. v. Tedford*, 2008 WL 2080930, *7 (N.D.Miss. 2008).

While Defendant has characterized the EEOC's claim for punitive damages in this case as "conclusory," the plaintiff's claims "allege a set of circumstances which […] demonstrate […] at least a real possibility that punitive damages will be at issue." *Smith v. Schmidt & McGarland Firm*, No. CIV.A. 3:06CV25-B-A, 2008 WL 1716646, at *1 (N.D. Miss. Apr. 9, 2008)(emphasis added). Specifically, the Complaint plausibly alleges that Defendant discriminated against Sanford and a class of Black, non-Hispanic temporary workers, that it was placed on notice of the discrimination, that it continued to discriminate against Sanford and the aggrieved individuals in the face of these complaints, and that it retaliated against Sanford by withholding a promised promotion and terminating her. These facts are more than sufficient to place punitive damages at issue. They show at least a colorable claim of "reckless or callous indifference to the federally protected rights of others" under the *Kolstad* standard. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536, (1999).

Moreover, Resource's claim that it did not employ Sanford, absolutely requires the EEOC conduct discovery on Defendant's financials. Establishing the liability of a successor employer for acts by a predecessor involves a three pronged inquiry that examines (1) whether there is substantial continuity between the business operations of the successor and the predecessor; (2) whether the successor had notice of potential liability when it acquired the relevant assets; (3) whether the predecessor is able to provide relief directly. *Valdez v. Celerity Logistics, Inc.*, 999 F. Supp. 2d 936, 944 (N.D. Tex. 2014).

Cases analyzing the third prong of this inquiry clarify that this involves consideration of both the predecessor and the successor's ability to provide relief. *Powe v. May*, 62 F. App'x 557 (5th Cir. 2003)(inquiring into the successor's ability to provide relief); *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 766 (7th Cir. 2013)(noting that whether the successor can

provide relief is a "goes without saying condition, not usually mentioned")(cited in *Valdez*); *Valdez 999 F. Supp. 2d 936, 942* (declining to extend *Powe's* automatic assumption that the successor's ability to provide relief is at the heart of the third factor, but noting that the successor's ability to provide relief is "potentially relevant, though not typically articulated as part of the multi-factor test.").

Because Defendant's financial statements may be a crucial element to the EEOC in establishing Defendant's liability and because punitive damages are at issue in this case, the EEOC respectfully requests that the Court compel Defendant produce the information sought by Request No. 9.

## VI.    CONCLUSION

Accordingly, Plaintiff EEOC respectfully requests this Court to grant its Motion to Compel and to order Defendants to provide complete discovery responses to Plaintiff's Request for Production Nos. 9, 12, 13, 15, 19, 20 within seven (7) days of this Court's Order, and to provide any additional relief this Court deems appropriate.

Dated: March 10, 2016

<div style="margin-left: 3em;">

Respectfully submitted,

**C. EMANUEL SMITH**
Regional Attorney
MS Bar No. 7473

**MARSHA L. RUCKER**
Supervisory Trial Attorney
PA Bar No. 90041

*/s/Christopher Woolley*
**CHRISTOPHER WOOLLEY**
Trial Attorney
CA Bar No. 241888
christopher.woolley@eeoc.gov

</div>

**CARRIE VANCE**
Trial Attorney
WI Bar No. 1056606
carrie.vance@eeoc.gov

**EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION**
1130 22nd Street South
Suite 2000
Birmingham, AL 35205
Phone: (205) 212-2064

**FAYE A. WILLIAMS**
Regional Attorney
TN Bar No. 011730

**GERALD L. THORNTON**
Supervisory Trial Attorney
TN Bar No. 15898
gerald.thornton@eeoc.gov

**EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION**
1407 Union Avenue, Suite 901
Memphis, TN 38104
(901) 544-0075

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 10, 2016, I filed the foregoing with the Clerk of Court using the

CM/ECF system which will electronically send notification of the filing to all attorneys of

record.

*/s/ Christopher Woolley*
Christopher Woolley